OPINION OF THE COURT
Jeffrey G. Stark, J.
Usurious loans are invalid and unenforceable as a matter of law and public policy. Where, as in this case, two judgment debtors by default make a substantial showing that their loan was usurious and that their creditor obtained the default judgment by misrepresenting the nature of the underlying loan, the debtors need not show an excuse for the default to obtain an order vacating the judgment. Both under the CPLR and pursuant to the court’s inherent authority to vacate default judgments in the interests of justice, the debtors are entitled to their day in court to establish a usury defense.
In March, 1979, defendants Panagiotis and Kalliopi Gialousakis, the owners of a pizzeria, borrowed a sum of money from a commercial finance agency, Mann, Forbes & Co. (hereinafter MF & Co.), for business purposes, secured by a mortgage on their home. Without the assistance of *677 counsel, defendants signed a mortgage note which obligated them to pay off the loan in 36 monthly $1,000 installments. The note on its face specified the principal sum owed as $36,000 without any interest. Defendants claim, however, that the actual sum borrowed was $25,000.
After defendants paid more than $20,000 towards the loan, they fell behind in their payments and in June, 1981, foreclosure proceedings were commenced. Defendants defaulted, and an order of reference to compute was duly entered. The referee accepted without inquiry the representations of MF & Co. that defendants had defaulted on a $36,000 loan which bore no interest, and computed the balance due MF & Co. on the date of defendants’ default as totaling $13,500. Based upon the referee’s report, an affirmation of regularity prepared by MF & Co.’s counsel, and a copy of the summons and complaint, the court signed a judgment of foreclosure and sale in March, 1982. The present plaintiff, National Travis, Inc., purchased defendants’ home at the foreclosure sale, and was issued a referee’s deed in November, 1982.
On November 24, 1982, plaintiff moved, pursuant to RPAPL 221, for an order directing the Sheriff to put it in possession of defendants’ home. In response to this motion, defendants first appeared in this action. They asserted that they had never been served with the summons and complaint in the foreclosure action, and claimed further that the loan for which the mortgage was given was usurious. According to defendants’ computation the interest rate on the loan was actually in excess of 25%. On December 22, 1982, defendants also moved by order to show cause for an order vacating the judgment of foreclosure and sale, setting aside the referee’s deed, and restraining National Travis from attempting to dispossess defendants from their home. Defendants asserted the same claims noted above in support of their motion.
On January 25, 1983, Justice Brucia ordered that a hearing be held on plaintiff’s motion for an order of possession “regarding the issue of service in the foreclosure action.” The court added that “[t]he issue regarding the legality of the loan and mortgage is not before this Court,” noting that defendants had represented that a motion to *678 set aside the default judgment was being prepared. After plaintiff filed a note of issue, as required by Justice Brucia’s order, plaintiff’s motion was set down for a hearing at Special Term, Part II.
On February 1, 1983, before the hearing ordered by Justice Brucia commenced, Justice Velsor also ordered a traverse hearing, this time on defendants’ motion to vacate the default judgment. On April 7 and 13, 1983, a traverse hearing was held before Justice McCaffrey. Although defendants had not complied with Justice Velsor’s order requiring that defendants submit a note of issue to obtain a traverse hearing on their motion, it was Justice McCaffrey’s understanding that the traverse hearing before him resulted both from plaintiff’s motion for an order of possession and from defendants’ motion “pursuant to CPLR § 5015(a) (4), to vacate the judgment of foreclosure and sale” on the ground that the court lacked jurisdiction to render the judgment.
At the hearing, Justice McCaffrey permitted testimony solely on the issue of whether defendants had in fact been served with process. Gerson Epstein, co-owner of MF & Co., testified that he had served defendants personally. Justice McCaffrey found his testimony to be “credible” and sustained service. Although Justice McCaffrey noted that Epstein’s service was “a highly questionable procedure” in view of his interest in MF & Co., he followed the settled rule that “service by a party himself, while irregular, is not void (see Matter of Kandel v. State Division of Human Rights, 70 AD2d 817).” Thereafter, he signed an order, entered June 29,1983, dismissing the defendants’jurisdictional claim and directing that the plaintiff be put in possession of the premises at issue. Defendants filed a timely notice of appeal from this order.
On June 30, 1983, Justice Brucia signed an order to show cause which stayed National Travis from taking further action to dispossess defendants pending a hearing on defendants’ claim that the underlying loan was usurious.
The court now has before it defendants’ motion, dated June 30, 1983, for an order vacating the default judgment “on the ground that the [underlying] loan was a usurious *679 loan.” Defendants make this motion pursuant to CPLR 5015 (subd [a], par 2), which permits a court to vacate a default judgment based upon a claim of “newly-discovered evidence”. They argue they “were unaware of the usury laws of the State of New York” when they defaulted, and that “had this newly discovered evidence * * * been introduced at trial, there probably would have been a different result.” In the alternative, defendants argue (apparently under CPLR 5015, subd [a], par 3) that the former plaintiff’s agent was guilty of misrepresentations and misconduct sufficient to justify vacating the default. Defendants do not argue, under CPLR 5015 (subd [a], par 1), that the default was otherwise “excusable”.
The threshold question which must be decided is whether this court is barred from considering defendants’ present claims by reason of Justice McCaffrey’s order directing that plaintiff be put in possession of the subject premises. A reading of the record before Justice McCaffrey and his memorandum decision shows that the only issue presented to, and decided by him, was whether personal service was properly made. In addition, the order of Justice Brucia dated January 25,1983 referring the plaintiff’s motion to hearing expressly stated that “the legality of the loan” was not to be considered at the traverse hearing, and Justice Velsor’s order directing a traverse hearing on defendants’ motion similarly was limited to the jurisdictional issue involving the claimed lack of service. Under these circumstances, Justice McCaffrey’s order after hearing cannot be said to have foreclosed further consideration of the legality issue. Consequently, defendants are not estopped from presenting the issue at this time. (Cf. 5 Weinstein-Korn-Miller, NY Civ Prac, par 5011.09 [doctrine of “law of the case * * * seeks to prevent the relitigation of issues of law that have already been determined” (emphasis added)]; see, also, Restatement, Judgments 2d, § 27, Comment e; Meyerson v John A. Lynch, Inc., 29 AD2d 761 [denial of motion made on one ground does not bar plaintiff from making another motion on other grounds].)
Turning to the merits, the court must reject, at the outset, defendants’ claim under CPLR 5015 (subd [a], par *680 2). Defendants’ attempt to characterize the usury defense as “newly-discovered evidence” is without merit. “[N]ewlydiscovered evidence” is evidence that could not have been discovered prior to or shortly after the trial. (See 5 Weinstein-Korn-Miller, NY Civ Prac, par 5015.07.) Since the facts underlying this claim were known to defendants when the action was commenced, their claim is really one of a “newly discovered theory” of defense which does not suffice for relief under this subdivision. (See Central Funding Co. v Kimler, 54 AD2d 748.) Nor can the court grant defendants’ motion based upon their asserted claims under CPLR 5015 (subd [a], par 3) — which permits relief from a judgment obtained through fraud, misrepresentations or other misconduct — since defendants fail to allege mi soon - duct which led to the procurement of the default, and instead allege fraud in the underlying transaction. (Supra.)
Nevertheless, in its independent review of the record, the court finds sufficient basis to warrant vacating the default, both under CPLR 5015 (subd [a], par 3) and pursuant to the court’s inherent authority to do so in the interests of justice. (See Town of Greenburgh v Schroer, 55 AD2d 602; Michaud v Loblaws, Inc., 36 AD2d 1013; 5 Weinstein-Korn-Miller, NY Civ Prac, par 5015.12 [collecting cases].)
First, if, as defendants state under oath, their loan was $25,000, not the $36,000 stated in the affidavits of regularity and the papers upon which the judgment was granted, then it follows that MF & Co. procured the judgment through material misrepresentations of fact. Since defendants’ sworn statements on this motion as to the amount of the loan are not rebutted, the court finds that a good claim for vacating the default on the grounds of fraud, misrepresentation, or misconduct in the procuring of the judgment has been made out. (CPLR 5015, subd [a], par 3; see 5 Weinstein-Korn-Miller, NY Civ Prac, par 5015.08.)
Second, the court finds that the judgment is sufficiently irregular on its face so as to justify vacating it in the interests of justice. It would have been highly unusual for MF & Co., a commercial finance agency, to give a non-interest-bearing loan to defendants. Consequently, the af *681 fidavits submitted by MF & Co. to obtain the judgment, claiming default on an interest-free loan, should have led the referee to look behind the affidavits. Because he failed to do so, however, this court determines that the judgment should be reopened so that such an inquiry can take place.
Finally, apart from the manner in which the judgment was obtained, defendants’ usury claim implicates important enough public policy considerations to justify vacating the default in the interests of justice. (See Mutual Home Dealers Corp. v Alves, 23 AD2d 791, 792 [default judgment in home foreclosure action vacated on basis of usury defense that has “at least arguable merit”].) Under the law, usurious contracts are void and may not be enforced. (General Obligations Law, § 5-511.) Defendants have asserted a substantial claim that the loan actually carried an interest rate in excess of 25% (at a time when the maximum rate allowed by law was no greater than 7V£% and a loan carrying a rate in excess of 25% was criminal). (See General Obligations Law, § 5-501; Banking Law, § 14-a; Penal Law, § 190.40.) Since defendants’ usury defense has apparent merit, the default judgment should be vacated for this reason alone.
In deciding to reopen the default, the court is not unmindful of the fact that the present plaintiff, National Travis, was not a party to the underlying loan. As the purchaser at a judicial sale, however, National Travis is entitled to no greater rights than MF & Co. (See Uniform Commercial Code, § 3-302, subd [3], par [a]; § 3-306.)
In sum, this is an unusual case where an order vacating a default is warranted in the absence of a showing of an excusable default. The law favors decisions on the merits (see, e.g., Moran v Rynar, 39 AD2d 718), and in furtherance of this policy and in the interests of justice, defendants are entitled to their day in court before they are evicted from their house and home.